IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EUGENIA CASAUS,

        Plaintiff,

vs.                                                                                                  No. CIV 03-890 RHS

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

        THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for Administrative Agency Procedure, filed February 13, 2004 [Doc. No. 13]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") benefits.

        Plaintiff, age 57, alleges a disability which commenced January 10,1999, due to back injuries and pain. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the application, concluding that there were jobs existing in significant numbers that Ms. Casaus could perform. The Appeals Council denied review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

        At the time of the Commissioner's final decision, claimant was 55 years old, with a high school education and training as a licensed practical nurse (LPN). <u>Tr. at 71, 144</u>. Her past relevant work experience was as an LPN.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to properly evaluate Plaintiff's credibility; (2) the ALJ's residual functional capacity finding was not supported by substantial evidence; and (3) the ALJ erred in finding that Plaintiff had transferable skills.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt. P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

Case 1:03-cv-00890-RHS   Document 18   Filed 09/21/04   Page 3 of 12

The ALJ denied Plaintiff's case at step five of the sequential evaluation process. Based on the testimony of a vocational expert, the ALJ found that Ms. Casaus could perform other jobs existing in significant numbers in the national economy. Tr. at 18.

Plaintiff testified that she worked in a nursing home for twenty years and left her job in 1999 because she just couldn't do it anymore. Tr. at 60. She stated that she suffers from back pain which goes from her waist up to her shoulders and neck and down her arms to her hands. Tr. at 62-63. She also complained of pain and swelling in her hands, Tr. at 57-58, and of migraine headaches which are controlled by nonprescription BC tablets. Tr. at 66.

Plaintiff stated that she prepares meals, does housework and limited yard work. Tr. at 55-56. She testified that she needs to sit or lie down several times a day. Id.

**First Alleged Error**

Plaintiff contends that the ALJ's credibility determination is erroneous. The ALJ found that "the claimant's testimony of functional loss and pain was not completely credible." Tr. at 14. To qualify as disabling, pain must be severe enough--either by itself or in combination with other impairments--to preclude any substantially gainful employment. See Brown v. Bowen, 801 F.2d 361, 362-362 (10th Cir. 1986). The Tenth Circuit has enumerated the following factors to consider when analyzing a claimant's pain evidence: " (1) [W]hether Claimant established a pain producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987)).

-3-

While a claimant is not required to present objective medical evidence to corroborate the *degree* of pain, Huston v. Bowen, 838 F.2d 1125 (10th Cir. 1988), the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain.  Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). Although Plaintiff submitted objective medical evidence of a pain producing impairment and demonstrated a loose nexus between the impairment and her pain, the ALJ found that the objective evidence alone did not establish that Plaintiff suffered from disabling pain.  Accordingly, the ALJ was required to evaluate Plaintiff's subjective pain testimony and determine how much her pain impaired her ability to perform work activity.

The ALJ must consider both objective indications and subjective accounts of the severity of Plaintiff's pain and degree of impairment.  Tenth Circuit Court of Appeals has explained that "[w]hen determining the credibility of pain testimony, the ALJ should consider such factors as 'the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.'" Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988)).

The ALJ examined many of the Thompson factors in his evaluation of Plaintiff's credibility. Tr. at 14-15.  He noted that the medical record, including the x-rays and MRI, did not fully corroborate Plaintiff's alleged severe limitations.  The ALJ found that "there is an indication that

she has some dysfunction of the C-6 vertebrae but there is no evidence of any structural abnormality of the spine." Tr. at 14.

The ALJ also discussed Dr. Eugene Toner's May 21, 2001 consultative examination report which stated that Plaintiff had normal C-spine x-rays and displayed no limitation in the range of motion of her cervical or thoracic spine. Dr. Toner stated that he was "unable to come up with any true objective findings that interfere with [Ms. Casaus'] ability to do things that would be considered normal for her age, size and sex." Tr. at 197. The ALJ also noted that no treating physician had opined that Plaintiff was disabled. Tr. at 15.

The ALJ considered Plaintiff's use of medication to control her discomfort. He noted that "her pain symptoms are relieved by over-the-counter medications." Tr. at 15. Plaintiff's lack of prescription pain medication may be inconsistent with Plaintiff's allegations of disabling pain and tends to support the ALJ's credibility finding. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996).

The ALJ also considered Plaintiff's activities. The ALJ observed that Plaintiff was able to walk for almost two miles, perform some housework and yard work, shop, and attend church. Tr. at 15. Consideration of the claimant's activities is appropriate when evaluating subjective complaints. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987).

The ALJ articulated specific reasons for questioning Plaintiff's credibility. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations are province of the ALJ, Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988), cited in Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994) and should not be upset when supported by substantial evidence. Diaz v. Sec'y of Health & Hum Servs., 898 F.2d 774, 777, cited in Kepler v. Chater, 68

F.3d 387, 391 (10th Cir. 1995). There is substantial evidence to support the ALJ's credibility determination in this case and the Court will defer to the ALJ on this issue.

**Second Alleged Error**

Plaintiff argues that the ALJ erred in finding that she has the ability to perform a wide range of light work. The ALJ relied on the May 31, 2001, physical evaluation by consulting physician, Dr. Toner, to support his decision. Tr. at 15-16. He also relied upon a residual functional capacity ("RFC") assessment done by non-examining consultative physician, Dr. Lloyd Schneiderman. Tr. at 14-15. Ms. Casaus contends that the ALJ improperly relied on the opinions of the two consulting doctors in reaching that conclusion.

Plaintiff's medical records indicate that she saw a physician, Dr. Haq Baber, on several occasions between 1992 and 1997 for neck and back pain and in 1998 for increased symptoms following a lifting injury. Tr. at 182-187, 229-259. He prescribed a series of facet injections, physical therapy and pain medications. The latest report from Dr. Babur, dated October 12, 1998, noted mild range of motion of Plaintiff's cervical spine and severe muscle spasm. Tr. at 178.

On June 21, 2000, Dr. Richard Radecki examined Plaintiff and diagnosed mechanical back pain secondary to chronic muscle spasm. He recommended physical therapy and stretching exercises. Tr. at 194.

State agency physician, Dr. Toner, performed a physical evaluation of Ms. Causaus on June 7, 2001. When Dr. Toner examined Ms. Casaus, he found that Plaintiff had full range of motion in both upper and lower extremities with the exception of internal rotation of her right shoulder. His report stated that Plaintiff had a paraesthesia of the C6 dermatome on her right

side.  According to Dr. Toner, Plaintiff reported being able to drive, to stand, sit or walk for an hour at a time and to lift 10 pounds.  Dr. Toner found no limitations in her ability to work.

The ALJ also relied upon state agency non-examining physician Dr. Lloyd Schneiderman's assessment of Plaintiff's residual capacity in which he opined that Ms. Casaus could occasionally lift and carry 50 pounds, could frequently lift and carry 25 pounds, could stand and walk for 6 hours total, could sit for 6 hours, could frequently kneel and crouch and could occasionally climb, balance, kneel and crawl.  Tr. at 206-208.  Dr. Schneiderman concluded that Plaintiff would be able to perform medium work.  Tr. at 212.

Ms. Casaus contends that the opinions of Dr. Toner and Dr. Schneiderman should not have been afforded the weight given to them by the ALJ because they were consulting, not treating physicians.  Plaintiff is correct that an agency physician's report, especially one from a non-examining physician like Dr. Scheniderman, should not be given as much weight as that of a treating physician. See Williams v. Bowen, 844 F.2d 748, 757 (10th Cir. 1988).   However, there is no justification for minimal deference here where the opinion is not inconsistent with any of the other medical reports (with the exception of Plaintiff's own statement concerning ability to do daily activities).   In fact, the ALJ is well advised to obtain a consulting physician's opinion when the claimant's record does not contain the necessary information from claimant's own physicians. Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997) (ALJ should order consultative examination when record establishes reasonable possibility of disability and result of examination could be expected to assist in resolving disability issue); see also 20 C.F.R. §§ 404.1512(f); 416.912(f).

The ALJ did not incorrectly weigh Dr. Toner's and Dr. Schneiderman's opinions in comparison with reports from treating physicians.  Although opinions of physicians "who have

treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim," Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987), cited in Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996), none of Plaintiff's treating physicians' records contradict the opinions of the consulting doctors in this case.

In assessing Plaintiff's RFC, the ALJ also considered Ms. Casaus' activities of daily living. It would have been an error to rely on this factor alone in making a residual functional capacity assessment, however, the ALJ relied here on a correct legal standard based on several factors, including a thorough discussion and analysis of the objective medical and the other evidence, Plaintiff's testimony about her daily activities, her complaints of pain or other symptoms and the adjudicator's personal observations. See 20 C.F.R. Pt.404, Subpt.P, App.2 §200(c).

The ALJ performed a thorough assessment of the information provided to him. The ALJ did not rely exclusively on the opinion of the non-examining consultants, but instead found Plaintiff to have more limitations than either of the consulting physicians indicated. If the ALJ had relied on their reports alone, he would have determined that Plaintiff was capable of medium work, rather than limiting her to light or sedentary work.

The assessment of RFC is reserved solely to the ALJ. SSR 96-5p; 20 C.F.R. §§ 404.1527(e)(2); 404.1546 (2003). Substantial evidence supports the ALJ's finding that Ms. Casaus retains the ability to perform a wide range of light work  This Court will not substitute its judgment for that of the Commissioner. See Sisco v. U.S. Dept. of Health & Hum. Serv., 10 F.3d 739, 741 (10th Cir. 1993); Hamilton v. Sec'y of Health & Hum. Servs. 961 F.2d 1495, 1498 (10th Cir. 1992).

**Third Alleged Error**

Plaintiff contends that she should have been found disabled under the Medical-Vocational Guidelines (Grids) because she has no transferable skills. In order to take into account the effect of a claimant's age and work experience on his ability to engage in any other kind of substantial gainful work, SSA regulations provide that "[i]f you are of advanced age (age 55 or older), and you have a severe impairment that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work ... that you can do despite your impairment(s). We will decide if you have transferable skills as follows.... If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work" (see § 404.1567(b)).
§20 C.F.R. 404.1568(d)(4).

The Grid rules require that a claimant of advanced age who is at least a high school graduate, who previously held a skilled or semi-skilled job that she can no longer perform but who has the residual functional capacity to perform light work, is not to be found disabled if she has job skills that are transferable. She must be found disabled if she does not have transferable job skills. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.07, 202.06.

Section 404.1568(d)(1)-(3) describes transferability as follows:

(1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
(2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which:
   (i) The same or a lesser degree of skill is required;
   (ii) The same or similar tools and machines are used; and

>    (iii) The same or similar raw materials, products, processes, or services are involved.
>     (3) Degrees of transferability.  There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs.  A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not          transferable.

§§20 C.F.R.  404.1568(d)(1)-(3).

A vocational expert (VE) was called for the purpose of determining whether Plaintiff's skills acquired during past work would transfer to a job at the exertional level the ALJ concluded the claimant could perform.  <u>See Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991). The VE testified that Ms. Casaus had acquired transferable skills, including knowledge of patient medications, the ability to bathe and dress patients, changing beds, assessing vital signs and keeping records. <u>Tr. at 72</u>. The ALJ also elicited testimony from the VE in response to hypothetical questions regarding possible jobs that might be available to Plaintiff.

The first hypothetical question described a person of Plaintiff's experience and education with an ability to sit, stand and walk for six hours a day, lift and carry 20 pounds occasionally, 10 pounds frequently, and a need for a sit/stand option with no prolonged sitting.  The ALJ's description of the hypothetical person included the ability to frequently stoop and crouch and to occasionally climb, balance, kneel and crawl.  The VE opined that the person described could perform the jobs of personal attendant or companion (light semiskilled work) and parking lot attendant or ticket taker (light unskilled work).  <u>Tr. at 72-73</u>.

In a second hypothetical question, the person described had the same restrictions as in the first hypothetical question with the exception of lifting capability.  The ALJ stated that this hypothetical person was able to lift and carry ten pounds occasionally and five pounds frequently.

The VE opined that the person described could perform the jobs of mail sorter, charge account clerk, or surveillance systems monitor (all unskilled sedentary work). Tr. at 74-75.

Plaintiff's attorney then questioned the VE about what effect an inability to perform some job tasks on a particular day might have on the availability of the jobs she identified. The VE responded that if Plaintiff "was unable to perform those tasks, I'd say two days out of the month for three months, she'd be let go." Tr. at 76. Plaintiff's attorney also asked how an inability to handle five pounds would impact her ability to perform the jobs the VE identified and the VE responded that if a person could not lift and handle items weighing five pounds, that person would be unable to maintain any employment. Id,

The VE opined that Ms. Casaus had transferable skills, identified specific skills actually acquired by the claimant and identified specific occupations to which those skills would be transferable. The ALJ determined that Plaintiff "can lift 20 pounds occasionally, 10 pounds frequently, she can sit, stand or walk up to 6 hours per day limited, however, by no prolonged sitting." Tr. at 15. The VE's testimony in response to the first hypothetical question (which described these limitations) was that there were at least two jobs involving Plaintiff's transferable skills which she could perform despite the stated limitations. The Court has been presented with no reason why it should question the VE's expertise on this issue.

The ALJ did not err in relying on the VE's opinion. The VE's opinion is substantial evidence supporting the ALJ's finding that Ms. Casaus possesses vocational skills that are transferable to other work in the economy.

**Conclusion**

The ALJ properly evaluated Plaintiff's credibility, considered the medical evidence regarding the severity of her impairments and their effect on her ability to work and established

that Plaintiff has transferable skills. Accordingly, the Court finds that the Secretary's decision in this case is supported by substantial evidence and should be affirmed.

   **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Procedure, filed February 13, 2004 [Doc. No. 13] is **DENIED** and this cause of action is **DISMISSED WITH PREJUDICE**.

              *Robert Hayes Scott*
               ROBERT HAYES SCOTT
               UNITED STATES MAGISTRATE JUDGE